**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter J Bass, et al., | No. CV-21-02197-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Kenneth D Brown, | |
| Defendant. | |
| Kenneth D Brown, | |
| Counter Claimant, | |
| v. | |
| Peter J Bass, et al., | |
| Counter Defendants. | |

Pending before the Court is Defendant Kenneth D. Brown's ("Defendant") motion for Rule 37 sanctions. (Doc. 53.)  For the following reasons, the motion is denied without prejudice. **Plaintiffs are ordered to file a status report by July 24, 2023**.

### BACKGROUND

On December 23, 2021, Plaintiffs—then represented by counsel—filed the complaint. (Doc. 1.) It alleges that from April to August 2021, Plaintiffs, who were tenants at a property owned by Defendant, "performed various handyman, renovation, and other services and tasks for Defendant" pursuant to "work assignments" telling them "where they needed to go and what work they would perform," but despite an agreement that Plaintiffs

would be paid "on an hourly basis for work performed," "Defendant has failed to compensate Plaintiffs for any of their work." (*Id.* ¶¶ 5, 8, 10-11.) The complaint further alleges that "after working for Defendant for over a month without pay, Plaintiff Peter Bass inquired of Defendant about how to handle rent" and was told "don't worry about it," causing Plaintiffs to "believe[] Defendant was applying a portion of their unpaid wages to their rent" and that "they would receive the balance in back and current wages owed to them for services performed," such that Plaintiffs "continued to work for Defendant, at no compensation, based on promises and assurances they would be paid, and a portion of their compensation was being applied to their rent." (*Id.* ¶¶ 14-16.) The complaint further alleges that "Defendant controlled Plaintiffs' schedule" and that "[i]n several workweeks, Plaintiffs each worked more than forty hours." (*Id.* ¶¶ 8-9.) Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA") and related state-law claims. (*Id.* at 4-8.)

On January 6, 2022, Plaintiffs filed a certificate of service in which Plaintiffs' then-counsel declared that service was effected "via certified mail return receipt requested" to Defendant's California address and that the documents "were in fact received by Defendant as indicated on the executed return receipt on December 31, 2021." (Doc. 6 at 1.) Attached was a return receipt, dated 12/31/21, bearing a signature that reads "Kenneth Brown," with the box for "Agent," rather than "Addressee," marked with an "X." (Doc. 6-1 at 2.) The boxes for "Certified Mail," "Return Receipt," and "Signature Confirmation" were also selected. (*Id.*)

On January 26, 2022, Plaintiffs filed an application for entry of default. (Doc. 7.) Plaintiffs mailed a copy of the application to Defendant at the California address and also mailed a courtesy copy to a Phoenix attorney who was serving as counsel for Defendant in a separate matter. (*Id.* at 2.)

On January 28, 2022, the Clerk entered default against Defendant. (Doc. 9.)

On March 1, 2022, Defendant's counsel in this action (newly retained at the time) emailed Plaintiffs' counsel to ask whether Plaintiffs would be willing to stipulate to setting aside the default based on Defendant's counsel's erroneous belief that Defendant had 30

days from the time of service to respond to the complaint, which, if correct, would have meant that the application for entry of default was filed prematurely. (Doc. 14-1.)

On March 3, 2022, Plaintiffs filed a 12-page motion for default judgment (Doc. 10), along with nearly 400 pages of exhibits attached in support of the motion (Docs. 10-1, 10-2, 10-3, 10-4).

On March 14, 2022, Defendant first appeared in this action by filing a motion to set aside default. (Doc. 11.) That motion did not mention the reason that Defendant's counsel expressed in his March 1, 2022 email (Doc. 14-1), but rather stated that "Defendant never actually received service of the Summons and Complaint" because he "physically left California and moved to Florida" on the very day that someone signed his name on the return receipt, "none of Defendant's housemates were actually present after 10am[1] at the address where the Summons and Complaint were delivered," and Defendant "does not know who signed" Defendant's name on the return receipt and had not authorized anyone to accept service on his behalf. (Doc. 11 at 2.) The motion was supported by Defendant's affidavit, which stated the same. (Doc. 11 at 10-11.)

Plaintiffs responded that Defendant's "self-serving affidavit" was, "without more," insufficient to "overcome a signed return receipt showing he was served in California," that it was "unclear what motive or rationale another person would have for signing for Brown's certified mail," such that Defendant's claim that "someone who does not live at his house inexplicably decided to sign for his mail using his name and signature" was "bizarre," that Defendant's counsel "did not disclose the allegations that [Defendant] moved away from California, did not sign the executed return receipt, or did not receive the Summons and Complaint" during a March 1, 2022 phone call, that Defendant's affidavit was "contradictory" because Defendant did not explain how he was absent from the California residence but knew exactly when his roommates were or were not there, and that, at the least, Defendant had constructive notice because Plaintiffs followed the

---

[1] The return receipt does not include a time, only a date, so it is not clear whether the certified mail was accepted and signed with Defendant's name before or after 10 a.m. (Doc. 6-1 at 2.)

- 3 -

procedural rules for service of process. (Doc. 14.)

Defendant's reply focused on distinguishing the cases cited in Plaintiffs' response brief and did not address the circumstances that Plaintiffs cited as undermining the credibility of Defendant's affidavit. (Doc. 15.)

On May 23, 2022, the Court granted Defendant's motion to set aside the default and denied as moot Plaintiffs' motion for default judgment. (Doc. 16.)

On June 6, 2022, Defendant filed an answer and counterclaim. (Doc. 17.) The counterclaim asserts that "[i]n October 2021, the Country Meadows Justice Court entered a judgment against [Plaintiffs] . . . , finding that [Plaintiffs] had breached the terms of [their rental lease], and awarding [Defendant] possession of the (formerly) leased premises and damages for [Plaintiffs'] failure to pay past-due rent along with other damages." (*Id.* ¶¶ 50-51.) The counterclaim does not explain what cause of action remains to be adjudicated by this Court following the "final judgment" entered by the Country Meadows Justice Court. (*Id.* ¶ 52.)

On June 28, 2022, Plaintiffs filed an answer to the counterclaim. (Doc. 19.)

On July 19, 2022, the parties filed the Rule 26(f) report. (Doc. 20.) The parties indicated that they were "also involved in an eviction case, *Brown v. Bass*, Case No. CC2021-160343 EA," which was "on appeal from the Country Meadows Justice Court to the Superior Court of Arizona." (*Id.* at 4.) The parties requested "the appointment of a U.S. Magistrate Judge to help facilitate settlement efforts." (*Id.*)

Later that day, the Court issued a scheduling order (Doc. 22) and referred the matter to Judge Bibles for a settlement conference (Doc. 23).

Throughout August and September 2022, the parties exchanged disclosure statements and served discovery requests. (Docs. 25-30, 33.)

On August 5, 2022, Judge Bibles set a telephonic settlement conference for September 8, 2022. (Doc. 28.) However, "there was a miscommunication between Plaintiffs' counsel and [Plaintiffs] regarding the location and call-in information for the settlement conference," such that Plaintiffs' counsel appeared at the September 8

settlement conference but Plaintiffs themselves did not. (Doc. 32 ¶ 4.)

On September 29, 2022, the parties filed a stipulated motion to stay the action until a settlement conference could be rescheduled in January 2023. (Doc. 32.) The parties "believe[d] that a settlement conference [would] still be productive," and planned to continue to engage in discovery because "they expressly agree[d] that the settlement conference ha[d] a better chance of succeeding with more information," but they requested that "all deadlines in this matter" be stayed. (*Id.*)

On September 30, 2022, the Court granted the parties' stipulated motion, stayed the action until January 30, 2023, and ordered the parties to submit a joint status report by January 30, 2023. (Doc. 34.)

On November 7, 2022, Judge Bibles reset the settlement conference for January 17, 2023. (Doc. 35.)

On January 17, 2023, the parties participated in the settlement conference with Judge Bibles, but no settlement was reached. (Doc. 36.)

On February 1, 2023, the parties submitted a joint status report that requested an extension of case deadlines. (Doc. 37.) The parties sought 90-day extensions to "allow the parties to complete their discovery responses and evaluate whether additional discovery is warranted" as well as to "adequately prepare their case for trial." (*Id.*)

On February 6, 2023, the Court granted the parties' request and extended the case deadlines. (Doc. 38.)

Throughout March 2023, the parties engaged in discovery. (Docs. 39-41, 43.)

On April 21, 2023, Plaintiffs' counsel filed a motion to withdraw as counsel of record without client consent. (Doc. 44.) The motion asserted that withdrawal was warranted "due to a breakdown of communication between Plaintiffs and the Firm and Plaintiffs' failure to meet their obligations required by their engagement of counsel." (*Id.*) The motion indicated that Plaintiffs' counsel did not know Plaintiffs' current mailing address (counsel found an address "through an internet search" but could not ascertain whether it was a current address) and listed three email addresses that counsel had on record

for Plaintiffs ("the Email Addresses").[2] (*Id.*)

That same day, the parties filed a stipulation to extend case deadlines. (Doc. 45.)

On April 25, 2023, the Court set a deadline of May 9, 2023 for Plaintiffs to respond to their counsel's withdrawal request and ordered Plaintiffs' counsel to serve Plaintiffs with a copy of the order via the Email Addresses. (Doc. 46.) The Court also extended the fact discovery deadline, expert depositions deadline, and dispositive motions deadline to "30 days from the date of the order resolving the pending motion to withdraw." (*Id.*)

That same day, a legal assistant at Plaintiffs' counsel's law firm sent Plaintiffs an email containing two attachments with the body text as follows: "Attached, please find the Motion to Withdraw and Order granting our withdrawal. Should you have any questions or concerns, please feel free to contact our office." (Doc. 47-3 at 1.)[3]

On May 11, 2023, the Court, having received no objection from Plaintiffs, granted Plaintiffs' counsel's motion to withdraw. (Doc. 48.)

That same day, defense counsel sent a letter to Plaintiffs (now proceeding pro se) requesting that, by May 19, 2023, they "respond to all outstanding discovery" and provide dates when they would be available for depositions. (Doc. 53 at 21.) The letter was sent to the Email Addresses and to the physical address that Plaintiffs' then-counsel had mentioned in the withdrawal request. (*Id.*) Plaintiffs did not respond. (*Id.* at 26.)

On May 22, 2023, Defendant noticed Plaintiffs' depositions, setting them for May 31, 2023 at 9:00 a.m. and 9:30 a.m. (Docs. 49, 50.) The notices were mailed and emailed to the same addresses that had been used when transmitting the May 11, 2023 letter from defense counsel. (*Id.*)

Also on May 22, 2023, the Clerk filed notices stating that attempted mail to Plaintiffs' mailing address of record (*i.e.*, the address that Plaintiffs' former counsel had

---

[2] All three of the Email Addresses appear in emails appended as exhibits to the motion for default judgment. (Docs. 10-2, 10-4.)

[3] The order, of course, did not *grant* counsel's withdrawal—it granted Plaintiffs an opportunity to contest the withdrawal. The message raises the concern that Plaintiffs may have read the body of the email, assumed what it said was a true description of the Court's order, and opted not to read the order itself.

- 6 -

found via an internet search) had been returned as undeliverable.  (Docs. 51, 52.)

On May 31, 2023, Plaintiffs failed to attend their noticed depositions.  (Doc. 53 at 26.)

On June 1, 2023, defense counsel sent a draft of the motion for sanctions to the Email Addresses.  (*Id.* at 27.)  The email to "pcoolj36@yahoo.com" was returned with a failure notice, and defense counsel received no response from the other two email accounts.  (*Id.*)

On June 9, 2023, Defendant filed the pending motion for sanctions.  (Doc. 53.)  Plaintiffs have not responded.

**DISCUSSION**

Defendant seeks sanctions under Rule 37 of the Federal Rules of Civil Procedure because, "[t]hroughout the course of this litigation, Plaintiffs have failed to adhere to court Orders, failed to provide adequate responses to Defendant's discovery requests which are necessary to prepare his defense, and now completely ignore all contact with Defendant's counsel." (Doc. 53 at 1.)  The specific sanctions sought by Defendant are the dismissal of Plaintiffs' claims and an award of attorneys' fees.  (*Id.* at 6.)

Rule 37(d) allows a district court to sanction a party who fails to appear for a properly noticed deposition or fails to serve a response to properly served interrogatories.  "The sanctions available to the district court are discretionary."  *Sigliano v. Mendoza*, 642 F.2d 309, 310 (9th Cir. 1981).  "Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's non-compliance must be due to willfulness, fault or bad faith."  *Id.*  "[T]he court must require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(d)(3).

Plaintiffs, previously represented by competent counsel, vigorously litigated this action for 15 months—first by seeking and obtaining default against Defendant and filing an extensive default judgment motion, and then, after Defendant's default was set aside,

- 7 -

by answering the countercomplaint, filing a joint Rule 26(f) report, engaging in months of discovery, and participating in a settlement conference before a magistrate judge. Reading between the lines, Plaintiffs eventually became unable to afford their mounting attorneys' fees, which resulted in the withdrawal of their counsel.

Although Plaintiffs have not participated in this action since their counsel withdrew, there may be benign reasons for that non-participation. It is unclear whether Plaintiffs received actual notice of their counsel's withdrawal request or any of the subsequent communications and filings by defense counsel. The physical address to which all of those materials were sent turned out to be a bad one, and one of the email addresses also appears to be invalid.

Defendant's actions since the withdrawal suggest that Defendant, too, suspects Plaintiffs may be subjectively unaware of all of the recent developments in this case. Notably, when Defendant noticed Plaintiffs' depositions for May 31, 2023, Defendant only set aside 30 minutes for the first deposition. This is not the approach one would expect of a party who actually believed his party-opponents would be showing up for their depositions. To the extent Defendant's purpose in scheduling the depositions in this manner was simply to lay the groundwork for a sanctions motion, this cuts against granting the sort of drastic sanctions being sought here.

As for Defendant's other primary ground for seeking sanctions under Rule 37(d)—Plaintiffs' purported failure to provide timely responses to Defendant's written discovery requests—the Court notes that although Plaintiffs' responses were initially "due on or about April 16, 2023" (Doc. 52 at 3), the parties subsequently stipulated to an extension to allow Plaintiffs "time to retain new counsel" and respond to the "outstanding" "discovery requests." (Doc. 45.) The Court granted that extension request and extended the deadlines to "30 days from the date of the order resolving the pending motion to withdraw." (Doc. 46.) That order issued on May 11, 2023. (Doc. 48.) The 30th day after that date was Saturday, June 10, 2023—making the deadline the following business day, Monday, June 12, 2023. Thus, the June 9, 2023 motion for sanctions was filed before the expiration of

the extended deadline for Plaintiffs to respond.

In the light of these considerations, and more broadly in light of the way this litigation has unfolded, the Court will exercise its discretion to decline to impose any Rule 37 sanctions against Plaintiffs at this time. Defendant was afforded a great deal of grace when the Court granted his motion to set aside the default entered against him and to deny Plaintiffs' default judgment motion (on which Plaintiffs spent $10,209.00 in attorneys' fees). Plaintiffs' subsequent failure to respond to the supplemental interrogatories has cost Defendant nothing and the money Defendant spent on noticing the depositions amounts to a relatively small sum. Defendant also had good reason to believe, before noticing the depositions, that they would not be attended. *Cf. Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, 2017 WL 10543657, *2 (C.D. Cal. 2017) ("[T]he Court, exercising its sound discretion, declines to sanction Plaintiff under Rule 37(d)(1). The Court notes that although Plaintiff failed to attend the October 30, 2017 30(b)(6) deposition, there is no evidence in the record showing that Plaintiff's failure to attend the 30(b)(6) deposition was due to bad faith."); *Westbrook v. Keihin Aircon N. Am.*, 2014 WL 6908472, *6 (S.D. Ind. 2014) ("Keihin now asks the Court to dismiss this case pursuant to Federal Rule of Civil Procedure 37(d) as a sanction for Westbrook's failure to appear [at his deposition]. While it may be within the Court's discretion to do so, the Court declines to use dismissal as a sanction of first resort in this case.").

Abandoning litigation mid-lawsuit is not permissible, and the Court will take steps to gauge Plaintiffs' interest in continuing to prosecute this action—if they do not express such an interest, dismissal of their claims for failure to prosecute is the inevitable outcome. But the Court declines to impose Rule 37 sanctions against Plaintiffs at this time based on the grounds set forth in Defendant's motion.[4]

Plaintiffs are ordered to file a status report by July 24, 2023 informing the Court whether they intend to continue prosecuting their claims against Defendant and, if so,

---

[4] Assuming Plaintiffs intend to continue prosecuting this action, Plaintiffs will need to prepare (either by themselves, or via newly retained counsel) responses to the outstanding interrogatories and will need to be deposed.

- 9 -

whether they plan to retain new counsel or to proceed *pro se*. Plaintiffs are cautioned that if they fail to file this status report, their claims against Defendant will be dismissed for failure to prosecute. Although the Court has some concern about its ability to ensure that Plaintiffs receive this order and become aware of their obligation to respond—as discussed elsewhere, the only mailing address on file for Plaintiffs is a bad one, so there is no point in sending this order to that address, and the same goes for at least one of the three Email Addresses—it is ultimately Plaintiffs' responsibility to provide updated contact information. *See* LRCiv 83.3(d) ("An attorney or unrepresented party must file a notice of a name or address change . . . no later than fourteen (14) days before the effective date of the change . . . .").

As a final matter, Defendant's counterclaim (Doc. 17) does not appear to identify any cause of action, nor is it evident from the allegations that the Court has jurisdiction over the counterclaim. Thus, Defendant shall, by July 24, 2023, file either (1) a motion for voluntary dismissal of his counterclaim pursuant to Rule 41(a)(2); or (2) a memorandum, not to exceed seven pages, showing cause why the counterclaim should not be dismissed for lack of jurisdiction and/or failure to state a claim.

Accordingly,

**IT IS ORDERED** that Defendant's motion for Rule 37 sanctions (Doc. 53) is **denied without prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs shall file a status report by **July 24, 2023**, informing the Court whether they intend to continue prosecuting their claims against Defendant and, if so, whether they plan to retain new counsel or to proceed *pro se* (that is, on their own, without the assistance of counsel). **Plaintiffs are cautioned that if they fail to file this status report, their claims against Defendant will be dismissed for failure to prosecute.**

**IT IS FURTHER ORDERED** that Defendant shall, by **July 24, 2023**, file either (1) a motion for voluntary dismissal of his counterclaim pursuant to Rule 41(a)(2); or (2) a memorandum, not to exceed seven pages, showing cause why the counterclaim should not

be dismissed for lack of jurisdiction and failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court shall send a copy of this order via email, with the subject line "IMPORTANT: Court order requiring Peter J Bass and Robert A Bass to file status report by July 24, 2023," to peteaz34@gmail.com and rbrobertbass64@yahoo.com.

Dated this 10th day of July, 2023.

Dominic W. Lanza
United States District Judge